IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **KELLIE RANUM**  Plaintiff,  v.  **NEBRASKA BOOK COMPANY, INC. aka NEBRASKA BOOK COMPANY**  Defendant. | CA NO._____  Jury Demanded |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

1. PRELIMINARY STATEMENT

1.1. Plaintiff demands a JURY TRIAL in this employment retaliation case as to any and all issues triable to a jury. Plaintiff alleges Defendant NEBRASKA BOOK COMPANY, INC. aka NEBRASKA BOOK COMPANY retaliated against Plaintiff and took adverse personnel actions against Plaintiff.

1.2 COMES NOW, KELLIE RANUM, (hereinafter referred to as "Plaintiff") complaining of and against NEBRASKA BOOK COMPANY INC. aka NEBRASKA BOOK COMPANY (hereinafter referred to as "Defendant" or "Nebraska Book Company"), and for cause of action respectfully shows the court the following:

2. PARTIES

2.1. Plaintiff is an individual who resided in Tomball, Harris County, Texas at the time the cause of action accrued.

2.2 Defendant NEBRASKA BOOK COMPANY is an employer engaging in an industry affecting interstate commerce, and employs more than 15 regular employees. Therefore,

Plaintiff requests service through Defendant's Registered Agent, Lawyers Incorporating Service, 14 Centre Street, Concord, New Hampshire 03301.

### 3. VENUE AND JURISDICTION

3.1. Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is where in which all or part of the cause of action accrued and the District where Defendant maintained an agency or representative. This District is also where Plaintiff worked for Defendant.

3.2. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(4), 28 U.S.C. § 1331 and Title VII of the Civil Rights Act of 1964, as amended.

3.3. Declaratory and injunctive relief is sought pursuant to Title VII of the Civil Rights Act of 1964, as amended.

3.4. Actual damages, to include back pay and front pay are sought pursuant to Title VII of the Civil Rights Act of 1964, as amended.

3.5. Costs and attorney's fees may be awarded pursuant to 42 U.S.C. § 12205 and Rule 54, FRCP and Title VII of the Civil Rights Act of 1964, as amended.

3.6. Compensatory damages may be awarded pursuant to Title VII of the Civil Rights Act of 1964, as amended.

### 4. STATEMENT OF CASE

4.1. Plaintiff is a 43 year old female and began working for Defendant Nebraska Book Company on May 30, 2010. Plaintiff was employed as the Vice President of Acquisitions. Plaintiff's work record was impeccable – Plaintiff had excellent reviews, was bonus eligible with stock options and received three performance based promotions within three years.

4.2. Plaintiff's salary was unequal to and lesser than Plaintiff's male peers. Upon Plaintiff's protected communication of this issue to Gwen Clancy, Senior Vice President for Nebraska Book Company, Ms. Clancy told Plaintiff that Plaintiff's pay would be brought up at least $15,000 or more to match the new male hire, Christopher Judge, (this male was reporting to Plaintiff with a salary $15,000 higher than Plaintiff's) at the annual review process. Plaintiff received an exemplary review, but Defendant wholly failed to give Plaintiff the promised salary increase.

4.3. In June 2013, Plaintiff attended a work event in Las Vegas along with other members of upper management of Nebraska Book Company. Scott Stratman, Vice President for Nebraska Book Company, told Plaintiff as well as others present about the waitress from the Hooter's Casino he would be going out with later and said that his wife didn't care and that women love a man with confidence and money and that he has both. Mr. Stratman referred to women who come to Las Vegas or who work in Las Vegas as loose women who are just waiting for men to spend money on them. The next day, still at the Las Vegas work event, Mr. Stratman began unwanted rubbing of Plaintiff's shoulders. Plaintiff told Mr. Stratman to stop. Another Vice President told Mr. Stratman to have a seat and leave Plaintiff alone. Plaintiff left very shortly after that incident. Mr. Stratman called Plaintiff's cell phone after Plaintiff left the event. Another Vice President told Plaintiff he was proud of the way that Plaintiff handled the situation.

4.4. Human Resources and management were aware of the Vice President's sexual harassment of Plaintiff. In fact, Human Resources called Plaintiff in on July 3, 2013 to participate in their investigation of sexual harassment of Plaintiff.

4.5. Just two weeks later after this protected activity, on July 16, 2013, Human Resources terminated Plaintiff.

4.6. Defendant had no legitimate reason for firing Plaintiff. Defendant used a pretextual reason stating that Plaintiff was terminated for "unprofessional text messages," to another employee including a text alleging that Plaintiff was being arrested in the courtyard and could Plaintiff stay in your room. Plaintiff was never being arrested, Plaintiff didn't send the texts and Defendant wholly failed to adequately investigate, follow up and check Plaintiff's records to see if a text was even ever sent from Plaintiff's phone or if a text appearing on someone else's phone was sent using a phantom text program or app. Defendant refused to give Plaintiff any credibility that Plaintiff didn't send unprofessional texts, instead believing the male employee under disciplinary action.

4.7. In fact, the male employee who sent unprofessional text messages was a friend of the male CEO. This employee was sexually inappropriate with Plaintiff from the beginning of his employment and used sexually graphic language towards Plaintiff, including in text messages while they were at work. He would ask Plaintiff what she was wearing, comment on the size of Plaintiff's breasts, tell Plaintiff explicitly what he wanted to do to her and told Plaintiff that he had a sexless marriage which made him really horny. This employee often acted inappropriately toward Plaintiff in front of others, including management. Because this employee would use his relationship with Nebraska's Senior Vice President (then CEO) as a threat to Plaintiff, including Plaintiff being put on a list, Plaintiff was hesitant to report the actions as Plaintiff needed her job. However, as the behavior became worse and often in front of others, management became aware of the actions.

PLAINTIFF'S ORIGINAL COMPLAINT

4.8. In early 2013, Plaintiff reported to management how uncomfortable she was working with this employee. In May 2013, Plaintiff found out that this employee had been lying to her about completing work and wrote him up – with Nebraska Book Company's explicit approval. This male employee became aggressive, mean and spiteful towards Plaintiff and told Plaintiff that if she tried to F' up (he used the word) his life that he would come after Plaintiff. Other management told Plaintiff this male employee was out to get her.

4.9. Plaintiff reported this threat to Human Resources in Plaintiff's July 3, 2913, meeting with them and explained that she was afraid. Defendant's Human Resources wholly ignored Plaintiff.

4.10. In fact, when Human Resources contacted Plaintiff to terminate her, Plaintiff thought they were contacting her about terminating this male employee. However, that had not happened and Plaintiff later learned that Human Resources was contacting directors and others about lies this "about to be terminated" male employee had made to HR about Plaintiff.

4.11. Defendant has sexually harassed Plaintiff, discriminated and retaliated against Plaintiff in violation of Title VII of the Civil Rights Act, as amended (including all amendments, particularly the Lilly Ledbetter Act) based on Plaintiff's gender, and for engaging in protected activity by reporting discrimination, reporting sexual harassment and for reported protected activity, under both the opposition and participation clauses of the Act.

4.12. Defendant continued to retaliate against Plaintiff after they illegally terminated her. Defendant threatened Plaintiff regarding a non-competition agreement, and although a) Plaintiff was <u>not</u> competing, b) Defendant gave Plaintiff written permission to perform certain work after she left, c) Defendant did not seem to realize they had given Plaintiff

two different contradicting agreements, and the latest agreement given to Plaintiff, would have expired, if it were valid, four months prior. Defendant attempted to tortuously interfere with Plaintiff's current employment regarding this issue and remains liable.

4.13. Defendant retaliated against Plaintiff for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended for reporting and opposing Defendant' illegal discriminatory acts based on gender.

## 5. TIMELINESS

5.1. Plaintiff brought this suit within 90 days from the date of receipt of the notice of right to sue.

## 6. ADMINISTRATIVE CONDITIONS PRECEDENT

6.1. Plaintiff has completed all administrative conditions precedent since Plaintiff filed Plaintiff's charge of discrimination within 300 days of the date Plaintiff learned of the adverse employment action.

## 7. DAMAGES

7.1. As a direct and proximate result of the aforementioned arbitrary and capricious acts, the Plaintiff has suffered grievous harm, including, but not limited to, substantial loss of income; humiliation and embarrassment among co-workers and others; sustained damage to Plaintiff's credibility and sustained damage to Plaintiff's prospects for future employment.

## 8. ATTORNEY'S FEES

8.1. Defendant' action and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff retaining the services of ROSENBERG &

SPROVACH, 3518 Travis, Suite 200, Houston, Texas 77002 in initiating this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## 9. PRAYER

9.1. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause Plaintiff have the following relief:

- 9.1.1. Judgment against Defendant, for actual damages sustained by Plaintiff as alleged herein;
- 9.1.2. Judgment against Defendant, for back pay lost by Plaintiff as alleged herein;
- 9.1.3. Judgment against Defendant, for front pay by Plaintiff as alleged herein;
- 9.1.4. Grant Plaintiff general damages for the damage to Plaintiff's reputation;
- 9.1.5. Pre-judgment interest at the highest legal rate;
- 9.1.6. Post-judgment interest at the highest legal rate until paid;
- 9.1.7. Damages for mental pain and mental anguish;
- 9.1.8. Compensatory damages;
- 9.1.9. Exemplary and punitive damages;
- 9.1.10. Attorney's fees;
- 9.1.11. All costs of court expended herein;
- 9.1.12. Such other and further relief, at law or in equity, general or special to which Plaintiff may show Plaintiff justly entitled.

Respectfully Submitted,


/s/ Ellen Sprovach
Ellen Sprovach
Texas State Bar ID 24000672
USDC SD/TX No. 22202
ROSENBERG & SPROVACH
3518 Travis, Suite 200
Houston, Texas 77027
(713) 960-8300
(713) 621-6670 (Facsimile)
Attorney-in-Charge for Plaintiff

OF COUNSEL:
Gregg M. Rosenberg
ROSENBERG & SPROVACH

ATTORNEYS FOR PLAINTIFF

PLAINTIFF'S ORIGINAL COMPLAINT